UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NESTOR RAMIREZ, | ) | |
| | ) | |
| Plaintiff, | ) | 18 C 3257 |
| | ) | |
| v. | ) | Judge Edmond E. Chang |
| | ) | |
| MANDARICH LAW GROUP, LLP, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

Nestor Ramirez brings this suit against Mandarich Law Group, LLP, alleging violations of the Fair Debt Collection Practices Act (FDCPA) 15 U.S.C. §§ 1692 *et seq.*, and the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA) 815 ILCS 505/10a. R. 1, Compl.[1] Specifically, Ramirez alleges that Mandarich unlawfully obtained Ramirez's consumer report via a "hard" credit inquiry even though Manardich could have done so via a "soft" inquiry. *Id.* ¶13. Mandarich now moves to dismiss Ramirez's complaint in its entirety under Federal Rule of Civil Procedure 12(b)(6). R. 16, Def.'s Mot. Dismiss. For the reasons stated below, the complaint is dismissed, though for now without prejudice to filing an amended complaint.

**I. Background**

In evaluating a motion to dismiss, the Court must accept as true the complaint's factual allegations and draw reasonable inferences in Ramirez's favor.

---

[1]This Court has federal-jurisdiction over the FDCPA claim, 28 U.S.C. § 1331, and supplemental jurisdiction over the state law claim, 28 U.S.C. § 1367. Citations to the docket are noted as "R.," followed by the docket entry.

*Ashcroft v. al-Kidd,* 563 U.S. 731, 742 (2011). In December 2016, Mandarich obtained Ramirez's consumer report (also known as a credit report) from Experian Information Solutions via what she calls a "hard" credit inquiry. Compl. ¶ 22. She did not know that Mandarich was going to obtain her consumer report. *Id.* ¶ 12. According to the report, Mandarich obtained the consumer report for a "collection purpose." *Id.* ¶ 12; R. 1-1, Exh. A, Experian Credit Report at 3. According to Ramirez, Mandarich could have obtained the consumer report through either a "hard" or "soft" inquiry. *Id.* ¶¶ 16-17. The major difference between the two methods is that hard credit inquiries, unlike soft inquiries, can be discovered by third-parties accessing a consumer's credit report for a period of two years after the date the hard inquiry was made. *Id.* ¶ 15. This adversely impacts a consumer's credit score and ability to access credit. *Id.* ¶ 14. According to Ramirez, the standard practice in the consumer debt collection industry is a soft inquiry. Compl. ¶ 18.

Almost two years later, in April 2018, Ramirez checked her credit report and discovered that Mandarich had made the hard inquiry. Compl. ¶12. As a result of the hard inquiry, Ramirez had been "unknowingly" subjected to higher interest rates, as well as less-favorable terms on her existing credit accounts, than she otherwise would have been subjected to. *Id.* ¶ 25. Ramirez filed this lawsuit, alleging that Mandarich violated § 1692d and § 1692f of the FDCPA, along with 815 ILCS 505/2 of ICFA. Mandarich now moves to dismiss the entirety of Ramirez's complaint. Def.'s Mot. Dismiss.

2

## II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).[2] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678-79.

---

[2]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, Cleaning Up Quotations, 18 Journal of Appellate Practice and Process 143 (2017).

## III. Analysis

### A. FDCPA (Count One)

Count One of Ramirez's complaint alleges that Mandarich's hard inquiry to obtain her credit report violated both § 1692d and § 1692f of the FDCPA. Compl. ¶¶ 30-36. Section 1692d is up first.

### 1. Section 1692d

To state a claim under § 1692d, the plaintiff must allege that the debt collector's conduct was "in connection with the collection of a debt,"[3] and that the conduct had the "the natural consequence" "to harass, oppress, or abuse." 15 U.S.C. § 1692d; *see also Horkey v. J.V.D.B. & Assocs., Inc.*, 333 F.3d 769, 774 (7th Cir.2003). Section 1692d contains six subsections that identify particular ways in which a debt collector can violate the FDCPA. *See, e.g.*, 15 U.S.C. § 1692d(1) ("use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person"); *id.* § 1692d(2) ("use of obscene or profane language"). Rather than invoke one of the six specific subsections, however, Ramirez brings her claim under § 1692d generally, that is, that Mandarich engaged in an abusive, harassing, or oppressive conduct.

---

[3]Neither side addresses whether Mandarich's conduct was "in connection with the collection of a debt." It is true that Mandarich never did actually reach out to Ramirez to try collecting the debt, but the Seventh Circuit has explained that "the absence of a demand for payment is just one of several factors that come into play in the commonsense inquiry of whether a communication from a debt collector is made in connection with the collection of any debt." *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 384-85 (7th Cir. 2010). In any event, the Court need not address this issue because neither side raised it.

In response, Mandarich's most sweeping argument is that it pulled the consumer report for a permissible purpose under the Fair Credit Reporting Act (FCRA), so as a matter of law, Mandarich did not violate the FDCPA. Def.'s Mot. Dismiss at 3-7. The Court disagrees. As pertinent here, under the FCRA, a consumer report may be obtained by a person who "intends to use the information in connection with a credit transaction … involving the … collection of an account of[] the consumer … ." 15 U.S.C. § 1681b(a)(3)(A). So Mandarich is right that obtaining a credit report in connection with the collection of a debt is permissible under the FCRA. *See, e.g., Miller v. Wolpoff & Abramson, LLP*, 309 F. App'x 40, 43 (7th Cir. 2009) (non-precedential disposition) (holding that a credit report obtained on behalf of the owner of the debt was a legitimate purpose). But the FCRA and the FDCPA serve two distinct purposes. The FCRA's primary goal is to improve the accuracy and fairness of credit reporting. 15 U.S.C. § 1681(a)(1)-(4). That is the not precisely the same as the primary purpose of the FDCPA, which is to tamp down abusive, deceptive, and unfair "debt collection practices," 15 U.S.C. § 1692(a), (e); *see Clomon v. Jackson*, 988 F.2d 1314, 1321 (2d Cir. 1993) (explaining that "the FDCPA sets boundaries within which debt collectors must operate"). So just because obtaining a credit report is permissible under the FCRA does not mean that, in certain circumstances, the same conduct is immune from liability under the FDCPA.

The cases cited by Mandarich do not establish the bright-line rule for which the defense advocates. For example, in *Demaestri* and *Searle* the consumers brought both FCRA and FDCPA claims, but the *sole* basis for their FDCPA claims was that

5

the defendants did not have a permissible purpose to access their credit reports under the FCRA. *See Demaestri v. Asset Acceptance Capital Corp.*, 2012 WL 1229907, at *3 (D. Colo. Mar. 14, 2012); *Searle v. Convergent Outsourcing, Inc.*, 2014 WL 4471522, at *5 (D. Mass. June 12, 2014). After concluding that the defendants did have a permissible purpose under the FCRA, naturally those courts then dismissed the FDCPA claims because the plaintiffs had based both claims on the same premise. *Demaestri*, 2012 WL 1229907, at *3; *Searle*, 2014 WL 4471522, at *5. Unlike the plaintiffs in *Demaestri* and *Searle*, Ramirez does not hinge her FDCPA claims on a violation of the FCRA. Instead, she alleges that Mandarich's conduct was oppressive and abusive because it could have obtained her consumer report via a soft inquiry instead. Compl. ¶ 33. So the issue here is not whether Mandarich had a permissible purpose to access Ramirez's credit report. Rather, the issue is whether Ramirez has sufficiently alleged that the *means* by which Mandarich accessed Ramirez's credit report (via a "hard" inquiry) rose to the level of a § 1692d violation.

On that question, remember that § 1692d prohibits conduct "the natural consequence of which is to harass, oppress, or abuse" the debtor or another person. 15 U.S.C. § 1692d. As the statutory text demonstrates, the subjective intent of the debt collector is unimportant; rather, the question is whether "the natural consequence" of the defendant's conduct was to harass, oppress, or abuse. *Horkey*, 333 F.3d at 774-75. So, contrary to Ramirez's argument, whether Mandarich "deliberately" made a hard inquiry instead a soft inquiry is not the true issue. Pl.'s Resp. at 4. What matters is the natural consequence of the hard inquiry.

6

When assessing the natural consequence of complained-of conduct, courts examine both the content and the context of the communication. *See, e.g., Harrer v. RJM Acquisitions, LLC*, 2012 WL 162281, at *6 (N.D. Ill. Jan. 19, 2012); *Chapman v. Ontra, Inc.*, 1997 WL 321681, at *4 (N.D. Ill. June 6, 1997). In *Harrer*, for example, the district court dismissed the debtor's § 1692d claim where the debt collector only "mail[ed] one collection letter" that "did not include abusive or harassing language; it merely stated that 'Wener Herrer' owed money on his Doubleday Book Club account and offered three opportunities to settle the account." 2012 WL 162281, at *6. Likewise, in *Chapman*, the district court also dismissed the debtor's § 1692d claim, concluding that the collection letter at issue was neither "harassing [n]or abusive in its tone or language." 1997 WL 321681, at *4.

It is true that this determination is often a question for the jury. *See Allen v. Bank of Am., N.A.*, 2012 WL 5412654, at *7 (N.D. Ill. Nov. 6, 2012) (quoting *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1179 (11th Cir. 1985)). But in cases where the facts alleged, accepted as true, do not have the natural consequence of harassing or abusing a debtor, the court can dismiss § 1692d claims as a matter of law. *See id.*; *see also Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 330 (6th Cir. 2006). This is one of those cases. Ramirez's allegation of a *single* hard inquiry, without more, is insufficient to sate a claim under § 1692d. The reasoning in an opinion from the Western District of Pennsylvania is persuasive. In *Thiessen v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, the plaintiff alleged that by conducting a hard inquiry as opposed to a soft inquiry into the plaintiff's consumer report, the defendants harassed

7

and oppressed plaintiff. 2015 WL 3643989, at *2 (E.D. Pa. June 12, 2015). The district court dismissed the claim, reasoning that accessing the plaintiff's consumer report on just one occasion was "far from engaging in any type of harassing conduct" because the conduct "did not threaten plaintiff, contain any offensive language, or attempt to coerce the payment of the debt in any way." *Id*. at *2 (cleaned up). Likewise here, Ramirez's allegations—even accepting them as true and giving her the benefit of reasonable inferences—do not rise to the level of harassment, oppression, or abuse. To be sure, *Thiessen* is not binding on this Court, but it is well-reasoned and persuasive, and is consistent with other cases in which a single act was held to be insufficient to state a § 1692d claim. *See Harrer*, 2012 WL 162281, at *6; *Chapman*, 1997 WL 321681, at *4. Of course, there might very well be instances when a single act is so egregious that it, by itself, amounts to harassment. But this is not one of those cases.

What's more, Ramirez alleges that she was "*unknowingly* subjected to higher interest rates and other less-favorable terms." Compl. ¶25 (emphasis added). That is, Ramirez did not even know that the hard inquiry had happened. So there is no plausible reason to believe that the natural consequence of the inquiry would be to harass, oppress, or abuse Ramirez—she did not even know about it. Nor did, on the current allegations, Mandarich ever deploy the fact of, or the results of, the hard inquiry in an attempt to collect a debt from Ramirez. Perhaps Ramirez can fix the allegations, but the current complaint fails to adequately state a § 1692d claim and it is dismissed. Ramirez may file an amended complaint (if she thinks she can address

8

the inadequacy) by April 22, 2019. If no amended complaint is filed by that deadline, then the dismissal will convert to a dismissal with prejudice.[4]

## 2. Section 1692f

Moving on to § 1692f, here too Ramirez's claim is inadequately pled. To successfully state a claim under § 1692f, a plaintiff must allege that the defendant used "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. In attempting to discern the meaning of "unfair or unconscionable," the Seventh Circuit has noted that this phrase "is as vague as they come." *Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480 F.3d 470, 474 (7th Cir. 2007). To determine whether a collection or attempted collection of a debt is "unfair or unconscionable," a court must view the conduct through the eyes of the unsophisticated consumer. *See McMillan v. Collection Prof'ls, Inc.*, 455 F.3d 754, 765 (7th Cir. 2006). The unsophisticated consumer "may be uninformed, naive, and trusting, … but has rudimentary knowledge about the financial world and is capable of making basic logical deductions and inferences." *See Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 645 (7th Cir. 2009) (cleaned up).

Here again Mandarich makes a sweeping argument. Specifically, Mandarich argues that the § 1692f claim must fail because it is based on the same conduct as the §1692d claim. Def.'s Mot. Dismiss at 7. In support of this argument, Mandarich

---

[4]It is worth noting that Ramirez argues that Mandarich has not demonstrated that it complied with the FCRA, and therefore it is premature at this stage to determine whether it had a permissible purpose to access her credit report in the first place. Pl.'s Resp. at 5. But because the Court rejected Mandarich's sweeping argument that the FCRA's authorization precludes any FDCPA violation, there is no need for the Court to rely on Mandarich's compliance, or not, with the FCRA, and it does not make a determination on that point.

contends that § 1692f "only applies to conduct that is unfair but is not specifically identified in any other section of the FDCPA." *Id*. The Seventh Circuit has not expressed an opinion on that bright-line rule. And the Court need not do so here, because the Court has already held that the §1692d claim was not adequately stated.

What is clear, however, is that the proposed § 1692f claim is fatally flawed. Remember that § 1692f bars "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. But Ramirez has not alleged that Mandarich used the hard inquiry as "a means to collect or attempt to collect a debt." *See generally* Compl. For all the complaint alleges, Mandarich did not do anything with the report, and there are no allegations that Mandarich communicated with Ramirez in any way, let alone that it attempted to collect a debt from her. It is true that the Experian report stated that Mandarich's hard inquiry had a "collection purpose." Compl. ¶ 12. But this is just a direct quote from the credit report. *See* Compl. ¶12 (citing Exh. A, Experian Credit Report at 3). Nothing more is alleged about Mandarich trying to collect the debt from Ramirez, and apparently she does not remember any contact from Mandarich. This gap in the allegations renders the § 1692f claim, at least as presently alleged, inadequate. Again, if Ramirez believes that she can fix the claim, then she may file an amended complaint on April 22, 2019. For now, this claim too is dismissed without prejudice.

### B. ICFA (Count Two)

Count Two of the complaint alleges that Mandarich's hard inquiry also violated the Illinois Consumer Fraud Act. Compl. ¶¶ 37-44. Mandarich moves to dismiss this

as well. But with the federal claims dismissed, the Court no longer has supplemental jurisdiction over the ICFA claim. If diversity jurisdiction were to apply, then that would be an independent basis to retain jurisdiction, but neither party addressed that possibility. So, on the state law claim, the case will proceed as follows: first, if diversity jurisdiction applies, then the parties (or whichever side believes it applies) shall file a Jurisdictional Statement by April 22, 2019, listing the citizenship of Ramirez and of the Defendant (which is apparently a limited partnership, so each partner's identity and citizenship must be identified), as well as explaining the basis for the amount-in-controversy requirement. If there is diversity, the Court then would address the state law claim even if no amended complaint is filed. If, however, there is no diversity jurisdiction, and no amended complaint is filed, then the Court will convert the FDCPA dismissals into with-prejudice dismissals and relinquish supplemental jurisdiction over the ICFA claim.

## IV. Conclusion

For the reasons discussed, Mandarich's motion to dismiss the FDCPA claims is granted. The deadline for filing an amended complaint, as well as the Jurisdictional Statement (explained above), is April 22, 2019. The status hearing of April 4, 2019, is reset to May 6, 2019, at 10:30 a.m.

ENTERED:

    s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 29, 2019