UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NESTOR RAMIREZ, | ) | |
| | ) | |
| Plaintiff, | ) | 18-cv-03257 |
| | ) | |
| v. | ) | Judge Edmond E. Chang |
| | ) | |
| MANDARICH LAW GROUP, LLP, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

Nestor Ramirez brings this suit against Mandarich Law Group, alleging violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692 *et seq.*, and the Illinois Consumer Fraud and Deceptive Business Practices Act (the Fraud Act), 815 ILCS 505/10a. R. 27, Am. Compl.[1] In general, Ramirez alleges that Mandarich unlawfully obtained her consumer report via a "hard" credit inquiry, even though Mandarich could have used a "soft" inquiry.

Last year, this Court dismissed the original complaint, though without prejudice. R. 26, Order on Mot. Dismiss at 1. Ramirez has since filed an amended complaint, again alleging violations of the FDCPA and the Fraud Act. Am. Compl. ¶ 1. Mandarich again filed a motion to dismiss all claims. R. 28, Mot. Dismiss. For the reasons discussed below, the amended complaint is also dismissed, this time with prejudice.

---

[1]This Court has federal-question jurisdiction over the FDCPA claim under 28 U.S.C. § 1331 and supplemental jurisdiction over the state-law claim under 28 U.S.C. § 1367. Citations to the docket are noted as "R.," followed by the docket entry.

1

## I. Background

In evaluating a motion to dismiss, the Court must accept as true the amended complaint's factual allegations and draw reasonable inferences in Ramirez's favor. *Ashcroft v. al-Kidd,* 563 U.S. 731, 742 (2011). In December 2016, Mandarich obtained Ramirez's consumer report (also known as a credit report) from Experian Information Solutions via what Ramirez calls a "hard" credit inquiry. Am. Compl. ¶¶ 13-14. According to Ramirez, Mandarich could have obtained the consumer report through a "soft" inquiry instead. *Id.* ¶¶ 19-20. The main difference between the two methods is that hard credit inquiries, unlike soft inquiries, can be discovered by third-parties who access a consumer's credit report for two years after the hard inquiry was made. *Id.* ¶ 18. This allegedly has an adverse impact on a consumer's credit score and ability to access credit. *Id.* ¶ 17. According to Ramirez, soft inquiries are the standard practice in the consumer debt collection industry. *Id.* ¶ 21.

Despite the industry practice, Ramirez alleges, Mandarich chose to use a hard inquiry. Am. Compl. ¶ 15. And not only that, Mandarich used a hard inquiry more than once. *Id.* Indeed, Ramirez's Experian report shows that at least one hard inquiry was made in December 2016 for a "collection purpose." *Id.* ¶ 13; R. 27-1, Exh. A, Experian Rep. at 3. (But the Experian report does not show any other hard inquiries by Mandarich.)

Ramirez did not discover the hard inquiry until almost two years later, when she checked her credit in April 2018. Am. Compl. ¶ 13. According to Ramirez, because of the presence of the hard inquiry on her credit report, she was subjected to higher

interest rates, as well as less-favorable terms on her existing credit accounts, than she otherwise would have been subjected to. *Id*. ¶ 28. So, in May 2018, Ramirez sued Mandarich for violations of the FDCPA and the Fraud Act. After dismissal of the original complaint, Ramirez has filed an amended complaint.

## II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).[2] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the

---

[2]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, Cleaning Up Quotations, 18 Journal of Appellate Practice and Process 143 (2017).

3

speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678-79.

### III. Analysis

### A. FDCPA (Count One)

Ramirez alleges that Mandarich's hard inquiry to obtain her credit report violated both § 1692d and § 1692f of the FDCPA. Am. Compl. ¶ 35. Each statutory provision is considered in turn.

### 1. Section 1692d

First, to state a claim under § 1692d, the plaintiff must allege that the debt collector's conduct was "in connection with the collection of a debt" and that the conduct had the "the natural consequence" "to harass, oppress, or abuse." 15 U.S.C. § 1692d; *see also Horkey v. J.V.D.B. & Assocs., Inc.*, 333 F.3d 769, 774 (7th Cir. 2003). The six subsections of § 1692d identify various ways in which debt collectors can violate the FDCPA. *See, e.g.*, 15 U.S.C. § 1692d(1) ("use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person"); *id.* § 1692d(2) ("use of obscene or profane language"). Ramirez's amended complaint does not invoke any of the specific subsections but instead alleges that Mandarich generally engaged in abusive, harassing, or oppressive conduct in connection with debt collection.

Mandarich argues that Ramirez's § 1692d claim should be dismissed because Ramirez has failed to allege any facts establishing how Mandarich's conduct was "in

connection with the collection of a debt." Mot. Dismiss at 6. In response, Ramirez alleges that the Experian report—which bears the note "collection purpose" for Mandarich's hard inquiry—establishes that the hard inquiry was made in connection to debt collection. R. 30, Pl. Resp. Br. at 3.

The Seventh Circuit has explained that "several factors ... come into play in the commonsense inquiry of whether a communication from a debt collector is made in connection with the collection of any debt" and "the absence of a demand for payment is just one" of these factors. *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 384-85 (7th Cir. 2010). *Gburek* also emphasized that "the purpose and context of the communications—viewed objectively—are important factors as well." *Id.* at 385. So, for example, a letter from a loan servicer which listed the next four payments that were due and expressed willingness to "work with" the debtor to resolve a delinquency was held not to be in connection with debt *collection* but merely a description of the debtor's account. *Bailey v. Security Nat. Servicing Corp.*, 154 F.3d 384, 388-89 (7th Cir. 1998). In contrast, an expletive-laden message to a debtor's coworker *was* considered in connection with debt collection because the only reasonable purpose of the phone call by the collection agent was to induce the debtor to settle her debt, despite the absence of an explicit demand for payment made to the debtor. *Horkey v. J.V.D.V. & Associates, Inc.*, 333 F.3d 769, 774 (7th Cir. 2003). Similarly, an account notice was found to be in connection with an attempt to collect a debt because "the notice was sent in the same envelope as the collection letter" and "the defendants would not have sent this combination of materials to the plaintiffs if they had not

5

been attempting to collect a debt." *Ruth v. Triumph Partnerships*, 577 F.3d 790, 799 (7th Cir. 2009).

Here, even accepting the allegations in the complaint as true, Ramirez has not adequately pled that the hard inquiry was "in connection with the collection of a debt," § 1692d. It is true that there is a note that says "collection purpose" in the Comments section of her Experian report for the one-time inquiry on December 14, 2016. Am. Compl. ¶ 13; *id.*, Exh. 1 at 3. But Ramirez only discovered this when she *herself* checked her own credit report in April 2018, nearly 16 months after the hard inquiry was made. *Id.* In the meantime, from December 2016 through April 2018, there is no allegation that Mandarich attempted to communicate with Ramirez or otherwise collect a debt from her during that entire time. In other words, Ramirez did not even know about the existence of the hard inquiry, so it is not plausible to conclude that the hard inquiry was, to use the statutory language, "in connection with the collection of a debt," 15 U.S.C. § 1692d. To be sure, it is not hard to imagine a debt collector that devises a nefarious plan aimed at *indirectly* communicating to a debtor in order to collect a debt. But nothing of the sort is alleged here, because there is no reason to believe that Mandarich's single inquiry would be communicated to Ramirez and prompt her to think that Mandarich was trying to collect a debt. Had Ramirez not happened to check her credit report, it could have been even longer than 16 months—if ever—before she discovered that the inquiry had been made. That would be the most incompetent effort to collect a debt ever devised by a debt collector. Thus, the Court concludes that the lack of direct or indirect communication from Mandarich

to Ramirez means that the Amended Complaint fails to sufficiently allege that Mandarich engaged in conduct that was in connection with the collection of a debt.

Even if Ramirez had successfully alleged that the hard inquiry was in connection with the collection of a debt, the Amended Complaint still fails to adequately allege that Mandarich's conduct had the "natural consequence … to harass, oppress, or abuse" Ramirez. *See Horkey*, 333 F.3d at 774-75. When assessing the natural consequence of complained-of conduct, courts examine both the content and the context of the communication. *See, e.g., Harrer v. RJM Acquisitions, LLC*, 2012 WL 162281, at *6 (N.D. Ill. Jan. 19, 2012); *Chapman v. Ontra, Inc.*, 1997 WL 321681, at *4 (N.D. Ill. June 6, 1997). Courts may dismiss § 1692d claims as a matter of law if the facts alleged, accepted as true, do not have the natural consequence of harassing or abusing a debtor. *See Allen v. Bank of Am., N.A.*, 2012 WL 5412654, at *7 (N.D. Ill. Nov. 6, 2012) (cleaned up).

In the earlier Opinion that decided the first dismissal motion, the Court held that an "allegation of a *single* hard inquiry, without more, is insufficient to state a claim under § 1692d." Order on Mot. Dismiss at 7 (emphasis in original) (citing *Thiessen v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 2015 L 3643989, at *2 (E.D. Pa. June 12, 2015). Even giving Ramirez the benefit of all inferences, the lone inquiry did not have any naturally coercive effect, and could not reasonably be interpreted as threatening or offensive in any way. Order on Mot. Dismiss at 8. The Court also noted that it could not conclude that the natural consequence of the inquiry was to harass,

7

oppress, or abuse Ramirez when it is undisputed that she was unaware of the inquiry until many months later. *Id.*

Now, in the Amended Complaint, Ramirez alleges, on "information and belief," that the December 2016 inquiry was not the only time when Mandarich accessed her credit report via hard inquiry. Am Compl. ¶¶ 15, 35. But without further *factual* allegations—like when these other hard inquiries happened, or how many there were, or when she discovered them—it is still not plausible that the inquiry, which Ramirez did not learn about for 16 months and did not *ever* learn about from Mandarich, had the natural consequence to harass, oppress, or abuse her. So, the § 1692d claim is dismissed.

## 2. Section 1692f

Up next is the § 1692f claim. To successfully state a claim under § 1692f, a plaintiff must allege that the defendant used "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. The text of the statute is not particularly concrete, and the Seventh Circuit has noted that this phrase "is as vague as they come." *Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480 F.3d 470, 474 (7th Cir. 2007). But courts have erected a few guideposts. Generally speaking, to determine whether a collection or attempted collection of a debt is "unfair or unconscionable," a court must view the conduct through the eyes of an unsophisticated consumer. *See McMillan v. Collection Prof'ls, Inc.*, 455 F.3d 754, 765 (7th Cir. 2006). The unsophisticated consumer "may be uninformed, naive, and trusting, … but has rudimentary knowledge about the financial world and is capable

8

of making basic logical deductions and inferences." *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 645 (7th Cir. 2009) (cleaned up).

With that standard in mind, Ramirez has failed to adequately plead a § 1692f claim.[3] In the earlier dismissal, the Court held that Ramirez had failed to allege any facts connecting Mandarich's hard inquiry to a debt collection effort (just like with the § 1692d analysis above). Ramirez's amended complaint again fails to state any facts suggesting that Mandarich used the hard inquiry as a "means to collect or attempt to collect any debt." As explained above, the reference to "collection purpose" on the Experian report is, on its own, insufficient in light of the radio silence from Mandarich after the inquiry. Ramirez does not allege any communication from Mandarich following the inquiry, nothing is alleged about any attempts to collect from Ramirez, and the Amended Complaint acknowledges that Ramirez remained unaware of the inquiry for many months. In sum, Ramirez has failed to state any facts that could support an inference that Mandarich intended the hard inquiry to function as means to collect a debt. So the § 1692f claim must also be dismissed.[4]

---

[3]Mandarich argues that there is a bright-line rule precluding viable § 1692f claims where the complained-of conduct is already covered by another section of the FDCPA. Mot. Dismiss at 7-8. This argument is not anchored on any particular statutory text, so the Court is skeptical. But there is no need to decide the issue, because the Court has already held that § 1692d does not cover the conduct in this case.

[4]To be clear, the Court is not taking any substantive position on whether Mandarich's choice to use a "hard" inquiry instead of a "soft" inquiry is unfair or unconscionable under this section. If Ramirez's allegations are true, in that there is no difference between the hard and soft inquiry methods other than the fact that a hard inquiry remains visible on a consumer's credit report, then it is certainly possible to construe a hard inquiry as an unfair or unconscionable practice—if it were used as a means to collect a debt. Again, though, because the § 1692f claim is being dismissed for other reasons, there is no need for the Court to decide this issue.

## B. ICFA (Count Two)

Finally, Ramirez also alleges a violation of the Illinois Consumer Fraud Act. Am. Compl. ¶ 43. But with the dismissal of the federal claims, the Court chooses to relinquish supplemental jurisdiction over the Fraud Act claim. When all federal claims are dismissed from a case, "there is a presumption that the court will relinquish jurisdiction over any remaining state law claims." *Dietchweiler by Dietchweiler v. Lucas*, 827 F.3d 622, 631 (7th Cir. 2016) (per curiam) (citing cases). Indeed, this presumption is statutorily expressed in 28 U.S.C. § 1367(c)(3), which provides for the discretionary relinquishment of jurisdiction over state claims when the claims providing original jurisdiction (here, federal-question jurisdiction) have been dismissed. So the Court dismisses the state claim without prejudice to refiling in state court. Having said that, if diversity jurisdiction applies, then that would be an independent basis to retain jurisdiction—but neither party addressed that possibility (the Amended Complaint cites only federal-question jurisdiction and supplemental jurisdiction, Am. Compl. ¶ 2). If Ramirez believes that diversity jurisdiction applies, then she must file a Jurisdictional Statement by April 15, 2020, identifying the citizenship of Ramirez and Mandarich (which is a limited partnership, so each partner's identity and citizenship must be identified individually), as well as the basis for the amount-in-controversy requirement (that is, exceeding $75,000). She should accompany that statement with a motion to vacate the judgment if she wants to proceed on the Fraud Act claim here in federal court.

## IV. Conclusion

For the reasons discussed, Mandarich's motion to dismiss the FDCPA claims is granted. This time, the dismissal is with prejudice, because Ramirez has already amended the complaint once. The status hearing of April 17, 2020 is vacated, and the Court will enter final judgment on the federal claims and relinquish jurisdiction over the state claim.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 25, 2020